**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LABORERS' PENSION FUND,** et al., <br><br>      Plaintiffs, <br><br>      v. <br><br>**SANCHEZ PAVING COMPANY,** et al., <br><br>      Defendants. | No. 10 C 2401 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

The Construction and General Laborers' District Council of Chicago and Vicinity, its related pension funds, and the administrator of those funds (collectively, "the Union") bring this action against Sanchez Paving Co. and related entities and individuals ("Sanchez Paving") asserting that Sanchez Paving violated the terms of the parties' collective bargaining agreement by failing to pay contract wages, failing to remit monthly benefit contributions to the Union's pension funds, and failing to submit dues reports to the Union. According to Count IV of the Second Amended Complaint, the Union obtained a $2,731,227.84 award against Sanchez Paving through the collective bargaining agreement's grievance and arbitration mechanism, and the Union now seeks to enforce that award as a matter of law. Sanchez Paving has filed a cross motion for summary judgment, arguing that the arbitration award is not enforceable because of errors in the Union's crafting of the Second Amended Complaint and procedural failings in the arbitration process. For the reasons stated below, the Court grants the Union's

motion for summary judgment as to Count IV, and denies Sanchez Paving's cross motion for summary judgment.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.

Sanchez Paving is an Illinois-based construction company specializing in asphalt and concrete work. The Union is a labor organization representing construction professionals in and around Chicago; it also administers pension plans for those professions. (Pls. Rule 56.1(a)(3) Statement (hereinafter "Pls. St.") ¶¶ 1-3).

In June 2006, Sanchez Paving and the Union entered into a collective bargaining agreement (the Independent Construction Industry Collective Bargaining Agreement, or "ICICBA"). (Defs. Rule 56.1(b)(3)(C) Statement (hereinafter "Defs. St.") ¶3). Under its terms, Sanchez Paving was required to pay union workers certain pre-set wages and to remit monthly benefit contributions and dues reports to the Union. (Pl. St ¶¶ 7, 21, 22). The ICICBA also incorporated a joint agreement between the Union and the Illinois Small Pavers Association ("Joint Agreement," effective June 1, 2010 through May 31, 2013), which set forth a grievance and arbitration procedure for the resolution of any dispute between Sanchez Paving and the Union. (Defs. St ¶¶ 5-7).[1]

The Union alleges that on or about July 21, 2011, it filed a written grievance against Sanchez Paving accusing it of failing to pay previously agreed upon wages and benefit contributions from June 15, 2006 through March 31, 2011.[2] (Pl. St ¶ 11).

---

[1] The Joint Agreement is attached in full to Plaintiffs' Second Amended Complaint at Dkt. 90-1.
[2] Sanchez Paving asserts that the date of this grievance is not established. (Dkt. 186 ¶ 11).

Pursuant to Article XVII of the Joint Agreement, the grievance was addressed to a Joint Grievance Committee ("JGC"). The JGC is comprised of three employer representatives and three union representatives, convenes monthly to hear disputes, and has authority to adopt its own rules of procedure. (Dkt. 90-1 at 44-45). Article XVII, Paragraph 2 provides that that a "determination of the JGC shall be governed by majority vote, provided that the Employer representatives and Union representatives shall have equal voting power. If decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon all parties." (Pl. St ¶ 10).

The JGC set a November 17, 2011 hearing date for the Union's grievance against Sanchez Paving. (Def. St. ¶ 25). Leading up to the hearing, on October 4, 2011, the Department of Labor and the Federal Bureau of Investigation executed a search warrant against Sanchez Paving, seizing its computers and business records. (Def. St. ¶ 22). On November 10, 2011, Sanchez Paving informed the Joint Grievance Committee that it was dispossessed of the records it needed to defend itself at the hearing and requested a continuance. The Joint Grievance Committee refused that request, and the hearing went forward on November 17, 2011. (Def. St. ¶ 27).

On Thursday, November 17, 2011, the Joint Grievance Committee, by majority vote, entered an award upholding the Union's grievance in its entirety and requiring Sanchez Paving to pay $1,463,972.24 in unpaid benefits and $1,267,255.60 in unpaid wages, for a total of $2,731,227.84. (Pl. St ¶ 12).

## ANALYSIS

The Union argues that this Court should enforce the JGC award against Sanchez Paving as a matter of law because, under *Merryman Excavation, Inc. v. Int'l Union of Operating Eng'r, Local 150*, 639 F.3d 286 (7th Cir. 2011), this Court is without authority to second guess the JGC's determination so long as the Union's claim was covered by the parties' collective bargaining agreement. Sanchez Paving argues that the Union cannot prevail under *Merryman* because the Union did not properly craft its Complaint, and because the process Sanchez Paving received before the JGC was both procedurally flawed and fundamentally unfair.

### A. The Applicable Legal Standard

In *Merryman, supra,* the International Union of Operating Engineers brought a series of grievances against a union employer, Merryman Excavation, for violations of the parties' collective bargaining agreement. The grievances were argued before a Joint Grievance Committee, which resulted in a JGC award for the union in the amount of $96,364.72. Merryman filed suit seeking to vacate the award, and the union counterclaimed to enforce it. The District Court granted summary judgment for the union, and the employer appealed. *Id.* at 287.

In affirming the District Court's ruling, the Seventh Circuit clarified that review of a JGC award is not like review of "a genuine arbitration" under the Federal Arbitration Act, which requires consideration of impartiality. *Id.* at 290. Instead, "[a] failure to comply with a joint committee award is a breach of a federal labor contract subject to Section 301 [of the Labor Management Relations Act] jurisdiction." *Id.* 29 U.S.C. § 185. Judicial review in that situation is much

narrower: "as long as the parties agreed that a method of dispute resolution would be binding, it is 'not open to the courts to reweigh the merits of the grievance.'" *Id.* at 289 (*quoting Gen. Drivers, Warehousement and Helpers, Local 89 v. Riss & Co.,* 372 U.S. 517, 519 (1963)). Courts can only consider whether the party seeking to avoid the JGC judgment received the procedures agreed upon in the collective bargaining agreement. *Accord Lippert Tile Co., Inc. v. International Union of Bricklayers and Allied Craftsmen, Dist. Council of Wisconsin and Its Local 5,* 724 F.3d 939, 944 (7th Cir. 2013) ("[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made … a court is not to rule on the potential merits of the underlying claims[,] … even if it appears to the court to be frivolous.")(quotations and citations omitted).

**B. Deficiencies in the Second Amended Complaint**

Sanchez Paving first argues that the Union is not entitled to enforce the JGC award because Count IV is captioned "To Enforce an Arbitration Award," and it cites § 9 of the Federal Arbitration Act as a basis for jurisdiction. Sanchez Paving states: "Count IV depends upon the existence of a 'final and binding arbitration award.' If there is no such award, then the Union cannot prove the essential allegation of its claim and there is nothing to enforce pursuant to Count IV, so that Sanchez is entitled to judgment in its favor on that claim." (Dkt. 181 at 3).

Sanchez Paving's argument is pedantic and unpersuasive. Although the Union refers to the Joint Grievance Committee award as an "arbitration award," that error in description certainly does not render the claim "fatally defective." (Dkt. 181 at 2).

It is clear from the Second Amended Complaint that the Union seeks enforcement of the JGC award, and thus Sanchez Paving was put on notice of the nature of the allegations against it. Nothing more is required. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (the short-and-plain-statement required under Rule 8 "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

The Union's reference to the Federal Arbitration Act is also unproblematic. The Second Amended Complaint states that the claim is brought pursuant to "Section 9 of the Federal Arbitration Act *and Section 301 of the LMRA.*" (Dkt. 90 ¶¶ 28, 34(a)) (internal parentheticals and citations omitted) (emphasis added). So, the Union correctly identified the jurisdictional basis for the claim (Section 301 of the LMRA), and Sanchez Paving was again on fair notice. The fact that the Union listed two jurisdictional bases (only one of which was viable) has no impact on its ability to recover. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 551 (7th Cir. 2001) ("Federal courts are entitled to apply the right body of law, whether the parties name it or not."). Pursuant to *Merryman, supra,* this Court has jurisdiction over the dispute pursuant to § 301 of the LMRA and only § 301 of the LMRA, nothing contained in the Second Amended Complaint can change that fact.

### C. Procedures before the JGC

The only remaining question for the Court, therefore, is whether Sanchez Paving received the procedures to which it agreed in the parties' collective bargaining agreement. Sanchez Paving argues that it did not receive the agreed-upon procedures because the Union's grievance was untimely, which divested the JGC of its authority to adjudicate it.

As noted above, the parties' collective bargaining agreement incorporated a joint agreement between the Union and the Illinois Small Pavers Association ("Joint Agreement"), which set forth a grievance and arbitration procedure. (Dkt. 90-1 at 44, *et seq*.). The Joint Agreement includes two sections related to timelines of grievances. Article XVII, Paragraph 2 provides:

> The Union must file the grievance within forty-five (45) days of the date of the occurrence giving rise to the grievance or when the affected employee knew or reasonably should have known of the existence of the grievance. Grievances not filed within the forty-five (45) day period are deemed waived and are not subject to being processed through this procedure.

(Dkt. 90-1 at 45). In addition, if the grievance arises out of an audit "showing a pattern or practice of wage underpayment, the grievance must be filed within forty-five (45) days after the Union's receipt of the audit." (Dkt. 90-1 at 46).

The Union's grievance in this case was based on a wage audit covering the period from June 15, 2006 to March 31, 2011. Sanchez Paving argues that, according to the contract provisions excerpted above, the Union should have filed its grievance within 45 days of March 31, 2011, *i.e.* before May 15, 2011. But, instead, the Union's grievance was filed about two months later, "on or about July 21, 2011."[3] The JGC's consideration of an untimely grievance, Sanchez Paving argues, was improper and deprived Sanchez Paving of the procedures to which it agreed. (Dkt. 194 at 5).

---

[3] Neither party has established when, exactly, the Union filed its grievance. The Union alleges that it filed its grievance "on or about July 21, 2011," but provides no Rule 56.1 support for that allegation.

In response, the Union makes two arguments. First, it argues that its grievance was, in fact, timely. The Union points to language from Paragraph 7, excerpted above, requiring that grievances to be filed within 45 days of *receipt* of the audit, not within 45 days of the audit's close. The Union fails to establish, however, when it received the audit. It argues only that "[t]here is no indication that the Union's grievance was untimely filed in the record." (Dkt. 191 at 4). In doing so, the Union effectively concedes that there is at least a factual dispute concerning whether its grievance was filed within the 45-day requirement.

Second, and in the alternative, the Union argues that it does not matter when it filed the grievance, because the JGC opted to conduct a substantive hearing anyway, and the Court cannot now reevaluate that decision even if it appears to have been erroneous. The Union writes, "[i]nterpreting the [collective bargaining agreement], including whether or not the underlying grievance was timely filed, is within the sole, final and binding authority of the JGC." (Dkt. 191 at 5).

The Court agrees. The Labor Management Relations Act articulates a clear policy in favor of JGC adjudication of disputes involving collective bargaining agreements: 29 U.S.C.A. § 173(d) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.") Courts must exercise extreme caution, therefore, before engaging in any interpretation or application of a collective bargaining agreement. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 569 (1960) (courts may not consider disputes between the parties as to "the meaning, interpretation and

application" of collective bargaining agreement). Instead, the court's only function is to ascertain whether the party who sought JGC adjudication made a claim which on its face was governed by the contract. *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 643-44 (1986). As the Seventh Circuit explained, "[w]hether a party has agreed to arbitrate a particular dispute is a question for the courts to decide," but, "[i]f the parties have in fact agreed to arbitrate their dispute, then they have bargained for *the arbitrator's* interpretation of their contract-not ours." *United Steel, Paper and Forestry Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008) (emphasis in original).

In this case, the Union's grievance against Sanchez Paving complained of wage and benefit underpayment. That claim is, on its face, clearly governed by the collective bargaining agreement. However, Sanchez Paving, relying on *Merryman*, asserts that because the JGC failed to provide certain procedural protections contained in the collective agreement, the award should be vacated. Although it is true that *Merryman* states that parties are entitled to the "process" or "procedures" outlined in their agreements, it also makes clear that JGCs have wide latitude to interpret those procedural requirements, and courts have limited authority to review those interpretations. For example, in *M.J. Electric, Inc. v. Int'l Union of Op. Eng'rs, Local 150,* the District Court found that a JGC award in the union's favor was null and void because the committee was not composed of an equal number of employer representatives and union representatives, as required by the plain language of the parties' collective bargaining agreement. 2003 WL 21640474, at *5 (N.D. Ill. July 10, 2003). The *Merryman* court discussed that opinion

disapprovingly, stating that "*M.J. Electric* overreached by reviewing the merits of the joint committee's interpretation of the equal representation provision in the agreement." 639 F.3d at 291 n. 2. In the same vein, it would be an overreach for this Court to review the merits of the JGC's interpretation of the timeliness requirements in the agreement. Accordingly, the Court finds that it is without authority to review the merits of the procedure or substance of the JGC's decision, and it cannot vacate the JGC award on the grounds of untimeliness.

**D. Basic Notions of Good Faith, Fairness, and Due Process**

Finally, Sanchez Paving argues that the JGC's consideration of the Union's grievance "so offend[ed] basic notions of good faith, fairness, and due process that the award cannot survive and the court cannot enforce it." (Dkt. 181 at 8). More specifically, Sanchez Paving argues that (1) the co-chair of the JGC, Martin Flanagan, unilaterally refused to postpone the hearing, despite Sanchez's complete inability to present a defense following the seizure of its business records by federal authorities; (2) the JGC procedure was rushed to punish Sanchez Paving for separate and unrelated disputes between Sanchez Paving and the Union; and (3) the audit on which the final award was based was biased and inaccurate.

None of Sanchez Paving "fundamental unfairness" arguments serve as a basis for vacating the JGC's award. As the case law in Part C above indicates, this Court has very limited authority to review procedural and substantive determinations of a JGC, even if those determinations appear fundamentally unfair. For example, in *Lippert Tile Co., supra,* an employer argued that a JGC award should be vacated because the individual who filed the union grievance sat on the same joint

committee that decided the grievance. 724 F.3d at 948. Acknowledging that "it might seem unusual" to allow the filer of a grievance to sit on the panel that adjudicates it, the Seventh Circuit held that it lacked authority under Section 301 of the LMRA to consider the employer's fundamental unfairness argument. *Id*. ("Section 301 simply does not include a free-floating procedural fairness standard absent a showing that some provisions of the CBA was violated."). Similarly, in this case, the Court's review of the JGC award does not encompass a review of the partiality or fairness of the JGC's determination. Because Sanchez Paving has failed to raise a justiciable challenge to the JGC award, the Court holds that the Union is entitled to summary judgment on Count IV of its Second Amended Complaint which seeks enforcement of the JGC award.

## **CONCLUSION**

For the foregoing reasons, this Court grants the Union's motion for summary judgment (Dkt. 129) and denies Sanchez Paving's motion for summary judgment (Dkt. 180).

E N T E R:

Dated: April 23, 2014

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge